Good morning, Your Honors. May it please the Court, my name is David Henkin, appearing on behalf of appellants who were defendant intervenors below. I'd like to reserve four minutes for rebuttal, if I may. The question in this case is, could I have your name again? Sure, it's David Henkin. Henkin, okay. Thank you. The question before this Court is whether the stipulated judgment, which was entered a mere two days after the Army filed its complaint in condemnation, and with absolutely no notice to the District Court regarding either the Hawaiian group's objections to the condemnation or their pending NEPA action challenging the entirety of the Army's plan to convert the 2nd Brigade to a striker brigade in Hawaii, of which the condemnation was but one part, whether that should be set aside in order to give the Hawaiian groups their day in court. I thought you got your day in court, or was this the other case? In the other case, Your Honor, the related case that we'll be hearing next, we proceeded all the way through to summary judgment with respect to the challenges based on NEPA. In this case, which is procedurally unusual, the merits of the case were resolved in the context of a motion to set aside the stipulated judgment. The judge reopened it so you could present your arguments, didn't he? Well, not exactly, Your Honor. The judge granted limited intervention for the purposes bringing a Rule 59 and Rule 60 motion. Our motion was premised on the basis that because this stipulated judgment had been entered without an opportunity for us to present our objections in our case, the stipulated judgment needed to be set aside so that the district court could reach the merits of our objections to the condemnation. The district judge refused to set aside the stipulated judgment, basically on the grounds that from the district court's perspective, there was no meritorious objection to be made. So I guess there was a bit of a collapsing of the merits with the procedural motion, which is, should the stipulated judgment have been entered before we had an opportunity to present our claims? Well, what would you have argued had you got the notice you say you didn't get that you didn't argue? Well, there are – there's – there were two claims, two objections that we sought to present to the district court. And I'm going to start with the one that the district court did not address at all in its ruling refusing to set aside the stipulated judgment. The claim that we were given no opportunity to present is whether the district court should exercise its clear authority under the Declaration of Taking Act 40 U.S.C. section 3114d.1 to condition the Army's taking possession on its compliance with NEPA. This is a remedy that the Fifth Circuit pointed out in 160 – But our 098 case said that that would be the subject of a separate action, as I understand it, the injunction. So you've got your other action, and if you win your other action, you're going to want an injunction in connection with that. And that would satisfy what you're looking for here, wouldn't it? Well, Your Honor, I will address that – that old – I believe it was – I guess we would refer to it as 0.95 acres case. Yes. In which there was never a claim raised by the defendant landowners that the taking possession of the land should be conditioned on compliance with NEPA. That was never raised in 0.95 acres. The court said that that would be the subject of a separate action, if they wished to do it. The Declaration of Taking Act – well, it was never raised by the landowners, so the court never had an opportunity to address it. But the Declaration – Well, it did address it. It addressed it at the very end, the last paragraph of its opinion. It was referring to whether there would be objections later brought in the context of the NEPA action to the construction of roads across the property. That's what the people were upset about, wasn't it? The – I believe the landowners in 0.95 acres were concerned about the loss of control of their land by the governments taking it by way of condemnation. I don't think that they were particularly concerned about what happened after. They didn't care if the government owned it. If it was the use of the roads, I think, was their concern. That's not my understanding of the case, Your Honor. The landowners actually offered to the Forest Service in 0.95 acres to enter into various types of agreements whereby roads could be built across their property. They wanted to maintain the control of their family land, and that's what the government ultimately decided that it was going to take from them. That's true. I think you're right. I agree with you. There never was a claim in 0.95 acres for exercise of discretion under the Declaration of Taking Act to condition the taking of possession, as opposed to the taking of title. What they tried to do was stop the entire condemnation. And that's something that we also sought to raise below and were denied an opportunity to do. And I'm going to get to that more difficult question, because there we need to grapple with 0.95 acres and determine whether or not it's dispositive, as the government contends, or whether it addressed a different question, as we contend. But there is no case in the Ninth Circuit of which I'm aware in which any court addressed authority under 40 U.S.C. 3114d1 to condition taking of possession. So in such a situation, the government takes title to the land under the Declaration of Taking Act. But that's exactly what you're doing in the next case. You're trying to enjoin the use of this land for training of the Second Brigade. And we're seeking that remedy under the National Environmental Policy Act. Right. So, I mean, the taking of title is a neutral act. That's what 0.95 acres said. Well, I certainly will address that. But to distinguish what's going on here, Your Honor, if we have a situation in which the government has taken title and possession under a final stipulated judgment under a Declaration of Taking Act, and that is un-attacked, that is unappealed, that is a final judgment, then we have serious concerns about the authority of the district court to disturb that judgment in an entirely separate matter should we ultimately prevail on our NEPA claims. Well, but wait a minute. The vesting of title in the U.S.A. can still result in you not allowing them to use the land for training of the Second Brigade. That's the second case. Well, our concern in the second case involves not only the use of that land for the training of the Second Brigade and the construction of new training facilities on that property, which would disturb cultural properties and destroy valuable endangered species habitat. We're also concerned with committing, with the Army committing itself to a course of conduct through the expenditure of nearly $16 million on this particular parcel, committing itself to a course of conduct in Hawaii when it has never evaluated alternate locations where it might pursue its goals with less environmental harm. And that gets to the whole line of cases, Sierra Club versus Marsh, et cetera, in which the concern of the courts is that the government not get so wedded to a particular idea before it has an opportunity to objectively analyze its options. And so if we merely prevented the taking of possession, the government still would have spent $15.9 million on this parcel and still would be predisposed towards carrying out transformation in Hawaii. You will agree, maybe you won't, but do you agree that if the Army did not violate NEPA in the case that will next be argued, your case is moot? If the Army did not violate NEPA with respect to its decision to convert the 2nd Brigade in Hawaii, this case, we have no further interest in this case. And that's why, you know, I mean, the cases are very tightly bound up. And the reason that we got involved in this case is because of concern that if we did not get involved in this case, both to challenge the legality of the condemnation absent compliance with NEPA, and also to seek the alternate relief precluding the Army from going forward with its activities in the South Range area pending compliance with NEPA. So we had the two claims, lack of congressional authority, which I'll now turn to, but I want to make very clear, we also had a claim about the district court exercising its authority under the Declaration of Taking Act to condition possession. And should this court reverse on the NEPA issue and agree with us that the Army violated NEPA, that claim should still be heard in the context of this condemnation action, regardless of what you feel about .95 acres and whether it controls or doesn't control the issue of congressional authority. So that claim, the only way for us to preserve that claim was to raise it in the condemnation case and having the district court not address it at all in its ruling on the condemnation case. So it did not pay any attention to the Fifth Circuit case that said that that's a remedy that not only is available, but they remanded to the district court to consider in that National Historic Preservation Act case whether to provide that relief. And that was the relief that was provided in the Southern District of Ohio case that we appended. Do you disagree with the notion that the .95 acres case holds that failure to comply with NEPA is not a defense to a condemnation action? The case says that, and we do not disagree with that holding. Where we distinguish the case, Your Honor, is that the case holds that NEPA is not a bar to a condemnation action. But let's talk about whether statutory authority to use the money is available and whether that has been determined in the .95 acres. But if NEPA is not a bar, is not an affirmative defense in .95 acres, how can your argument in this case stand? Because, Your Honor, in .95 acres, the issue of whether or not a failure to comply with NEPA is a condition precedent to the exercise of or to the existence of congressional authority was not presented. It wasn't presented there. It wasn't presented to the Fifth Circuit. And the way that we know that it was not presented is that the phrasing of the argument wasn't presented, but the substance of noncompliance with NEPA as a bar to condemnation certainly was. There is no question that .95 acres includes some very broad dicta and discussion of the issue that if the Court determines that you are aware that very broad dicta, if well considered in the Ninth Circuit, is the law of the circuit. I am aware of that, Your Honor. And what I, what I, what we've submitted to the Court in our briefs, and I would submit to you today, is that to hold that .95 acres is as broad as some of its language would suggest, establishes an inconsistency with large bodies of the Ninth Circuit case law involving the National Environmental Policy Act. That to hold, for example, the Ninth Circuit states that the act of condemning land is a mere transfer of title, and the mere transfer of title is irrelevant, has nothing to do with NEPA, cannot be reconciled with the other Ninth Circuit cases dealing with segmentation. Well, that may be an argument for an in-bank call, but this panel, I think, is bound by .95 acres. If the, if the panel determines that the case should be read as broadly as its dicta suggests, then, yes, Your Honor, I would agree with you, and, you know, candidly, it's a difficult case. But the only way that we can read it consistent with other Ninth Circuit case law and with congressional intent, as we pointed out in our briefs, the congressional intent in enacting NEPA was that to the fullest extent possible, the public laws of the United States shall be interpreted and administered in accordance with the policy set forth in this chapter. And there is nothing at all in the Declaration of Taking Act that precludes a Federal agency from analyzing and subjecting to NEPA its decision to pursue a project that involves condemnation. In fact, these procedures that NEPA sets forth, the procedures that require you to look at alternatives and impacts, these are precisely the type of decisional procedures that were present in United States v. Carmack and that led the Supreme Court in that venerable precedent to determine the agency in that case had acted in a manner that was not arbitrary and capricious. Contrary-wise, the Army here, we allege in the other case, and we'll be talking about that shortly, failed to follow the necessary procedures in order to make a determination whether to convert the 2nd Brigade in Hawaii and, consequently, whether it was necessary to condemn the South Range area in the first place. And we would submit that when you're dealing with the power of condemnation, the ability of the Federal Government to come in, and in this case it was a friendly condemnation, but the rule that you establish here is the rule that applies generally to any situation, the power of the government to come in and forcibly take someone's property, you really want to be sure that Congress authorized that action. And here, as in Tennessee Valley Authority v. Hill, we submit that the Court should find that when Congress appropriates money, and here there was no specific line-item appropriation to buy the South Range area, it was here is over $100 million to do construction and acquisition at Schofield Barracks. When Congress appropriates that money, it assumes that the Army is going to follow the necessary procedures that are established under law, that NEPA makes clear that every Federal agency must follow before engaging in activity that is a major Federal action. And there is no way to reconcile the Army's position here with its own regulations under NEPA, where they talk about land acquisitions. And with respect to land acquisitions, there is no distinction that logical distinction between a land acquisition by way of condemnation and any other type of land purchase. They both involve passing title and possession. And the Army's regulations specify that land acquisitions are not exempt from NEPA unless the land use will not change substantially or the land acquired will not exceed 40 acres. Here we've got 1,400 acres going from pineapple fields to military training areas. The regulations further provide that it is presumed that you have to do an EIS when the land acquisition may lead to significant changes in land use. And the regulations specify that you cannot segment one Army action from another in order to avoid the reach of NEPA. So when you look at their own regulations, they didn't understand them in the way that 0.95 acres would suggest. They understood that in the correct circumstances, a land acquisition, when it is part and parcel of a larger action, is something that needs to be subjected to NEPA, and that's precisely what they did here. They started out, the record shows at page 156, originally they were going to do an environmental assessment for the acquisition as a stand-alone activity. Thank you, Your Honor, I'll take another minute or two. Originally, they were going to do an environmental assessment, that's the record at 156, and then at 159 of the record, they recognized that it's part and parcel of the overall striker conversion. There's no way they could get away with suggesting that it was independent of that. And because it was part and parcel of that, they needed to roll it into the environmental impact statement. The Army's failure to comply with NEPA violates its own regulations by not doing an adequate analysis, and thus, as in U.S. v. Carmack and as in the Scott Lumber case that this case, that this Court decided, you would find that they were acting arbitrarily and capriciously, therefore, without congressional authorization when they failed to comply with a condition proceeding to exercise of the power of condemnation. So for that reason, Your Honor, and also for the reasons that the district court failed to set aside this hastily entered stipulated judgment to allow us to present a claim saying that at least the possession should be conditioned under the Declaration of Taking Act, we urge reversal. Thank you very much. May it please the Court, Michael Gray with the Department of Justice on behalf of the United States. With me at the council table is Gary Grimmer for the Campbell Estate, the original landowners, who would like two minutes of the appellee's time. Of course, our position is that .95 acres controls, and I would just go straight to the question of withholding of possession under the Declaration of Taking Act, .95 acres itself reversed an order vacating an order of possession. So under the facts of that case, that question was presented and the Court said, no, you don't vacate an order of possession for noncompliance with NIFA and reversed that order. The second point I'd like to make is that the Fifth Circuit case says that withholding of possession can be used as a tool to force NIFA compliance when no other tools are available. Here, there clearly was another tool available, and that's the second case today. And the third point I'd like to make with regard to possession is that, in fact, possession has already passed. The statute says the Court can fix the terms upon which possession passes. Here, possession has passed and compensation has been paid. Are you trying to say that this is moot? I believe that the question would be moot at this point, because the statute says that the Court can fix the terms on which possession passes, and possession has at this point already passed. So the only issue is use. That's correct, and that's the next case. What are you going to do if we reverse the next case? What are we going to do? I suppose they'll either try to sell it back or find some other use for it. I mean, another thing is, if you reverse in the next case, it doesn't mean that we can't do the project. It means that we go back and we have to study some more, and so certainly we would have the land still for use in that project after going through the study. If there are no other questions, I will turn it over to Mr. Grimmer. Since this land is in Hawaii, let me start out by saying aloha kakahiaka. Good morning. Aloha. I don't really have anything to add except that I wanted to emphasize the title has passed, the money has been paid, and I agree with, as my brief said, I agree with everything the government has argued on behalf of its position. Thank you. That was a long trip for a short time. We had someone in Hawaii one time, we were talking about going out there. I think it was a U.S. attorney here, we thought we'd go out there three times a year rather than two times a year, and she thought for a minute, she said, well, you know, you don't want to do that. She said, you've got a Nordstrom's here in San Francisco, and she wanted to tell us that, you know, this is a wonderful island and all that, but there's still a rock out there and that people do appreciate getting off of it from time to time, which is kind of interesting. That's why we're still going only twice a year to Hawaii. It's a pleasure to be here, and I'm glad to have done this job. Okay. Your honors, of course, in .95 acres, they reversed the withholding of possession because they determined that there was no defense based on NEPA because they never considered segmentation, they never considered the issue of the lack of congressional authority. You see no reference in that case to what Congress intended in NEPA and whether the Declaration of Taking Act is subject to NEPA, so it's not surprising that that was the result they had there. What we've submitted here is that this case is distinguishable because these are precisely the claims that are presented here, illegal segmentation, failure to comply with NEPA. As far as the mootness of the case, I find that a curious claim, given that the complaint in condemnation was filed on a Wednesday. I didn't get into the whole detail because I don't think it's material to the outcome, although it does – it is material to the issues of mistake and misrepresentation that we were in the midst of negotiations with the Army about a stipulated TRO, essentially, which ultimately we secured a few days after they took the property with giving us, depending on who you believe, no notice or a day or two notice. But in any event, they went into court on a Wednesday. They didn't tell the court that there was a related case, so they got assigned to Judge Mulway instead of Judge Ezra. Judge Mulway, two days later, was approached by the parties, who said, everyone's in agreement, there are no claimants out there, there are no objections, please enter the stipulated judgment, and I can vouch for Judge Mulway. She does things very quickly, and she immediately signed the order completely unaware of any objection. We timely filed a motion under both Rule Fifth – well, first, on the following Monday, the next business day, we sought intervention, which Judge Ezra granted us for the purpose of bringing a motion to set aside, and we timely brought that. Now, it's true, Judge Ezra denied the motion to set aside, so we timely filed an appeal I would respectfully submit that we could do nothing more to preserve our rights under this case than to argue to this Court that they should set aside the stipulated judgment for the purpose of allowing us to make our arguments. You know, we've argued as well as we can on the brief why .95 acres should not be read as broadly as the government would read it, because it would render – there's no way to harmonize it with your other jurisprudence. But of course, the main topic for today is whether the Army violated DEPA, and we shall turn to that, but in the meantime, I would respectfully urge you to reverse the District Court's opinion and set aside the stipulated judgment. Thank you very much. This action will be submitted. This Court will stand in recess for 10 minutes.
judges: B. Fletcher, Thompson, Bea